# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

SPACE UNLIMITED, LLC,

      Plaintiff,

v.                            **MEMORANDUM OF LAW & ORDER**
                             Civil File No. 17-5139 (MJD/DTS)

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA and
AMERICAN CASUALTY COMPANY OF
READING, PENNSYLVANIA,

      Defendants.

Thomas F. DeVincke and Patrick B. Steinhoff, Malkerson Gunn Martin LLP, Counsel for Plaintiff Space Unlimited, LLC.

Michael P. O'Bresly, CNA Coverage Litigation Group, and William L. Davidson, Lind Jensen Sullivan & Peterson, PA, Counsel for Defendant American Casualty Company of Reading, Pennsylvania.

## I.    INTRODUCTION

This matter is before the Court on Defendant American Casualty Company of Reading, Pennsylvania's Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment. [Docket No. 28] After careful review of the

parties' filings, the Court concludes that oral argument is unnecessary. Therefore, the Court cancels oral argument and will rule on the papers.

## II.   BACKGROUND

### A.   Factual Background

#### 1.   Plaintiff Space Unlimited, LLC

Plaintiff Space Unlimited, LLC ("Space") is a Minnesota limited liability company.  (Am. Compl. ¶ 1.)   Space owns commercial real estate located at 1313 Chestnut Avenue, Minneapolis, Minnesota (the "Property").  (Id. ¶ 5.)

#### 2.   The 2016 Policy

Defendant American Casualty Company of Reading, Pennsylvania ("American Casualty") is an insurance company.  (Am. Compl. ¶ 2.)  Space purchased from American Casualty an insurance policy numbered B3010041836 with effective dates April 20, 2016 to April 20, 2017 ("2016 Policy").  (Am. Compl. ¶¶ 6-7; Am. Compl., Ex. A, 2016 Policy at 6.)  The named insured for the 2016 Policy is Space.  (2016 Policy at 6.)  Four additional named insureds are The Uptown Wellness Center LLC; Historic King Inn, LLC; Lowry NE, LLC; and Stevens Group, LLC.  (Id. at 12.)  The 2016 Policy provides Commercial Property and third-party Commercial General Liability coverage.  (See, e.g., 2016 Policy at 7.)

2

### 3. The Underlying Lawsuit

On March 11, 2011, Space leased space in the Property to Jeremy Stanbary, to be used as a theater. ([Docket No. 14-2] Am. Compl., Ex. B, Underlying Compl. ¶¶ 11-12.) In 2013 and 2014, Stanbury entered into revised lease agreements with Space for the same location. (Id. ¶¶ 14, 16.) On February 5, 2015, Stanbury entered into a final lease agreement with Space with respect to the Property. (Id. ¶ 18.)

In October 2016, Stanbary and Epiphany Studios, LLC d/b/a Open Window Theater ("Epiphany") sued Space, Metropolis Minneapolis, LLC; Zev Oman; and Kristi Oman in Minnesota State Court, Hennepin County ("Underlying Lawsuit"). (Am. Compl. ¶ 8; Underlying Compl.) Stanbary and Epiphany alleged that Space illegally operated the Property by renting it to Stanbary for use as a theater when the Property lacked a certificate of occupancy so it could not be used as anything other than a warehouse. Space advertised the space as usable for commercial tenants and represented to Stanbary that it could be used as a theater. Due to Space's actions, Stanbary was constructively evicted from the Property, and Epiphany was forced to cease operations indefinitely. (Underlying Compl. at pp. 1-2.) The Underlying Complaint asserts: Count 1: Declaratory Judgment (based on the claim that the 2011-2015 leases were void

due to the lack of a certificate of occupancy); Count 2: Breach of Contract (based on the claim that the 2011-2015 leases were violated because Space failed to maintain the Property and comply with laws relating to the condition of the Property); Count 3: Fraudulent Misrepresentation (based on the claim that Space misrepresented to Stanbary that he could use the Property as a theater, thereby inducing him to enter into the 2011-2015 leases); Count 4: Negligent Misrepresentation (based on Space representing to Stanbary that the Property could legally be used as a theater and failing to disclose that it could only be used as a warehouse); Count 5: Promissory Estoppel & Unjust Enrichment (based on Space promising, in 2011-2015, that the Property could be used as a theater and that the property would be maintained and kept in good condition); Count 6: Failure to Return Security Deposit, Minn. Stat. § 504B.178 (based on Space's failure to return Stanbary's security deposit for the lease of space in the Property by September 18, 2016); Counts 7-8: Civil Theft & Conversion (based on Space diverting utilities from Stanbary causing Stanbary to pay for utilities at the Property used by other tenants and entities); Count 9: False Statement in Advertising Act ("FSAA"), Minn. Stat. § 325F.67 (based on Space issuing false advertising regarding leasing the Property); Count 10: Consumer Fraud Act

("CFA") (based on Space making misrepresentations in attempting to lease the Property); and Count 11: Uniform Deceptive Trade Practices Act ("UDTPA"), Minn. Stat. § 325D.43 et seq. (based on Space misrepresenting the Property available to lease to the public). Stanbary and Epiphany sought monetary damages, declaratory judgment that all of the leases (2011-2015) were void; and injunctive relief. (Id. at p. 21.)

### 4. Tender of the Underlying Lawsuit to American Casualty

On January 31, 2017, Space provided a copy of the Complaint from the Underlying Lawsuit to American Casualty and requested defense and indemnity. (Am. Compl. ¶ 16; see also [Docket No. 31] O'Bresly Decl., Ex. I.) On March 6, 2017, American Casualty declined coverage on multiple bases, including the fact that the Property (1313 Chestnut Avenue) was not included in the Designated Premises Endorsement. (Am. Compl. ¶ 16; see also O'Bresly Decl., Ex. J.)

### B. Additional Insurance

Defendant Travelers Casualty Insurance Company of America ("Travelers") is an insurance company. (Am. Compl. ¶ 3.) Space purchased an insurance policy from Travelers, effective February 2012 through February 2017,

5

which does name the Property as a designated location. (Id. ¶ 18; O'Bresly Decl., Ex. R, 2012 Travelers Policy at 3; O'Bresly Decl., Ex. S, 2014 Travelers Policy at 3.) Space tendered the Underlying Lawsuit to Travelers on January 31, 2017. (Am. Compl. ¶ 20.) Travelers rejected that claim, apparently based on the understanding that it was a worker's compensation injury claim. (Id. ¶¶ 21-27.)

### C. Procedural History

On September 25, 2017, Space commenced a lawsuit against American Casualty in Hennepin County Court. On November 16, 2017, American Casualty removed the matter to this Court. [Docket No. 1]

On March 6, 2018, Space filed an Amended Complaint against American Casualty and Travelers. [Docket No. 14] The Amended Complaint alleges: Count 1: Breach of Contract – Failure to Defend; Count 2: Breach of Contract – Failure to Indemnify; Count 3: Violation of Minnesota Unfair Claims Practices Act – Travelers; and Count 4: Declaratory Judgment – Minnesota Statutes Chapter 555. American Casualty now seeks dismissal of all claims against it (Counts 1, 2, and 4).

## III. DISCUSSION

### A. Standard for Motion for Judgment on the Pleadings

6

"A motion for judgment on the pleadings will be granted only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law." Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004) (citation omitted). The Court "accept[s] all facts pled by the nonmoving party as true and draw[s] all reasonable inferences from the facts in favor of the nonmovant." Id. (citation omitted). In deciding a motion for judgment on the pleadings, the Court considers the pleadings and "some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings," such as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (citations omitted).

B.  **Evidence Submitted**

The Court rejects Plaintiff's claim that American Casualty's motion should be denied because American Casualty has only submitted selected portions of the relevant insurance policies. Also, Space's motion is not converted into a motion for summary judgment simply because American Casualty has submitted excerpts of Plaintiff's insurance policies and matters of public record. The 2016 Policy is incorporated into and attached to the Amended Complaint.

7

(See Am. Compl. ¶¶ 6-7 ("Space purchased a policy of insurance from [American Casualty] (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit A**. The Policy coverage period commenced on April 20, 2016 and ran through April 2017."); Am. Compl., Ex. A.) Similarly, the Travelers policy is incorporated by reference in the Amended Complaint. (See Am. Compl. ¶ 18.) To the extent that Plaintiff now asserts that its claims are based on the 2011 and 2015 American Casualty policies, those policies are also incorporated by reference in the Amended Complaint; Plaintiff, itself, submits portions of those same policies (Oman Aff., Exs. A-B), and there is no argument that the excerpts submitted by American Casualty are inaccurate. The public records submitted are the types of documents that may be considered on a motion for judgment on the pleadings. No other evidence is necessary to sustain American Casualty's motion.

    C.    **Standards for Duty to Defend and Indemnify**

"Interpretation of an insurance policy, and its application to the facts of the case, are questions of law." Franklin v. W. Nat'l Mut. Ins. Co., 574 N.W.2d 405, 406 (Minn. 1998). "The existence of a legal duty to defend or indemnify is also a legal question. . . ." Id.

8

"The policy must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning." Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co., 383 N.W.2d 645, 652 (Minn. 1986). Generally, "parties are free to define the exact scope of the policy's coverage and may specify the losses or encumbrances the policy is intended to encompass." Brown v. St. Paul Title Ins. Corp., 634 F.2d 1103, 1107 (8th Cir. 1980) (citation omitted). However, "[b]ecause most insurance policies are preprinted forms drafted solely by insurance companies—basically contracts of adhesion—policy words of inclusion will be broadly construed, and words of exclusion are narrowly considered." Gen. Cas. Co. of Wis. v. Wazniak Travel, Inc., 762 N.W.2d 572, 575 (Minn. 2009) (citations omitted). Unambiguous words are given their "plain, ordinary, and popular meaning." Id. (citation omitted). If terms are ambiguous and reasonably susceptible to more than one interpretation, they will be construed against the insurer and interpreted liberally in favor of finding coverage. Id.

### 1. Duty to Defend

"An insurer's duty to defend is distinct from and broader in scope than the duty to indemnify." Franklin, 574 N.W.2d at 406.

9

> [A]n insurer's duty to defend arises when any part of the claim against the insured is arguably within the scope of protection afforded by the policy. An insurer seeking to escape the duty to defend bears the burden of establishing that all parts of a cause of action clearly fall outside the scope of coverage.

Id. at 406-07 (citations omitted). "The existence of the duty to defend the claim is determined by comparing the language of the allegations in the underlying complaint to the relevant language in the insurance policy." Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co., 819 N.W.2d 602, 616 (Minn. 2012).

### 2. Duty to Indemnify

> [A]n insurer has a duty to indemnify when its insured is found liable for a third-party claim within the terms of the liability insurance policy, but an insurer has no duty to indemnify when its insured is found liable for a third-party claim that is outside the policy's scope.

Remodeling Dimensions, Inc., 819 N.W.2d at 616.

Under Minnesota law, "[t]he duty to defend is broader than the duty to indemnify; therefore, if the court concludes there is no duty to defend, then there also is no duty to indemnify." Selective Ins. Co. of Am. v. Smart Candle, LLC, 781 F.3d 983, 985 (8th Cir. 2015).

### D. Designated Premises Endorsement

The Court grants American Casualty's motion for judgment on the pleadings because none of the claims in the Underlying Lawsuit are in any way related to the properties listed in the Designated Premises Endorsement.

The 2016 Policy provides:

> [American Casualty] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury," to which this insurance does not apply.

(2016 Policy, Businessowners Liability Coverage Form at p.107 ¶ A(1)(a).)

The Declarations page lists the Designated Premises Endorsement as forming part of the General Liability Coverage, which states:

BUSINESSOWNERS LIABILITY COVERAGE FORM

SCHEDULE*

| **Premises:** |
|---|
| Locations listed on the Declaration page |
| **Project:** |
| |

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

The following is added to the Businessowners Liability Coverage Form:

This insurance applies only to "bodily injury," "property damage," "personal and advertising injury," and medical expenses arising out of:

> 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises, or
>
> 2. The project shown in the Schedule.

(2016 Policy, Limitation of Coverage to Designated Premises or Project at p.106.)

The Schedule of Locations and Coverage lists only two locations: 2406 Stevens Avenue South and 2929-2922 Bryant Avenue South, both in Minneapolis. (2016 Policy, Schedule of Locations and Coverage at p.8.) (Although not necessary for the Court's ruling on the motion for judgment on the pleadings, the Court notes that the same policy was renewed from April 2008 through April 2016. (O'Bresly Decl., Exs. A-H.) The Designated Location Endorsement has been in every version of the policy. (See O'Bresly Decl., Ex. A, 2008 Policy at ACC 104; O'Bresly Decl., Ex. B, 2009 Policy at ACC 278; O'Bresly Decl., Ex. C, 2010 Policy at ACC 479; O'Bresly Decl., Ex. D, 2011 Policy at ACC 696; O'Bresly Decl., Ex. E, 2012 Policy at ACC 860; O'Bresly Decl., Ex. F, 2013 Policy at ACC 969; O'Bresly Decl., Ex. G, 2014 Policy at ACC 1027-28, 1124; O'Bresly Decl., Ex.

H, 2015 Policy at ACC 1181, 1276.) None of the policies ever listed 1313 Chestnut as a Designated Location. (Id.) Nor has the location of Space's office address, 100 West Franklin, ever been a Designated Location. (Id.))

Designated premises exclusions "limit[] coverage to liabilities that were related to events originating at one of the listed locations." See Evanston Ins. Co. v. Gaddis Corp., 145 F. Supp. 3d 1140, 1151 (S.D. Fla. 2015). See also Am. Guarantee & Liab. Ins. Co. v. 1906 Co., 129 F.3d 802, 806 (5th Cir. 1997).

Here, Plaintiff has put forth no argument that its actions at issue in the Underlying Lawsuit originated from one of the locations listed as a designated premises in any of the American Casualty policies. None of the claims in the Underlying Lawsuit arise out of the ownership, maintenance or use of the premises listed in the policies or the operations necessary or incidental to the premises listed in the policies.

E. **Whether American Casualty's Interpretation Would Render the Policy Illusory**

In the Amended Complaint, Space asserts that the Property is "the only real property owned by Space," so that if American Casualty "will not insure the Property, then Space purchased no coverage for its real property in exchange for the premiums that Space paid to [American Casualty]." (Am. Compl. ¶ 17.) In

13

Plaintiff's memorandum, Plaintiff does not argue that the policies are illusory. Therefore, this argument has been waived.

Additionally, the 2016 Policy is plainly not illusory. It explicitly provides coverage for liability arising out of the ownership, use or maintenance of two premises other than the Property. Additionally, the American Casualty policies identify insureds other than Space. The Declaration Pages on the 2016 Policy list four LLCs as "additional named insureds:" the Uptown Wellness Center LLC; Historic King Inn, LLC; Lowry NE, LLC; and Stevens Group, LLC. (2016 Policy at p.12.) Public records demonstrate that these LLCs are tied to the specific buildings listed as designated premises in the 2016 Policy. (See Request for Judicial Notice, Exs. AA-FF.)

### F. Personal and Advertising Injury

Plaintiff's claim that American Casualty owes a duty to defend because the Underlying Complaint alleges a personal and advertising injury is rejected. The Designated Premises Endorsement clearly states that the Businessowners Liability Coverage Part only applies to "personal and advertising injury" arising out of the ownership, maintenance or use of the premises scheduled on the policy and the operations necessary or incidental to those premises, and the Property is not a scheduled premises. See Commerce Bank v. W. Bend Mut. Ins.

Co., 870 N.W.2d 770, 773 (Minn. 2015) ("Provisions in a policy must be read in context with all other relevant provisions."). Thus, American Casualty has no duty to defend the Underlying Lawsuit.

### G. Employee Dishonesty Coverage

In Space's Amended Complaint, it alleges that American Casualty must defend and indemnify the Underlying Lawsuit because the 2016 Policy requires it to pay for loss of or damage to Business Personal Property resulting directly from "employee dishonesty." (Am. Compl. ¶ 11.) In its opposition brief, Plaintiff does not argue that employee dishonesty coverage applies. Therefore, this argument has been waived.

Additionally, the "Employee Dishonesty" endorsement does not apply in this case. The Employee Dishonesty endorsement states: "We will pay for loss of or damage to Business Personal Property resulting directly from 'employee dishonesty.'" (2016 Policy at 46 ¶ 1.) The Employee Dishonesty endorsement explains that it adds "the following coverage . . . to your Businessowners Special Property Coverage Form." (2016 Policy at 46.) The Businessowners Special Property Coverage Form states that American Casualty "will pay for direct physical loss of or damage to the Covered Property at the premises described in the Declarations caused by or resulting from a covered cause of loss." (Id. at 18 ¶

15

A.) First, there is no allegation of a "direct physical loss of or damage to Covered Property" at either of the premises listed in the Declarations. Second, the Special Property Coverage form does not require American Casualty to defend or indemnify Space from lawsuits. The Property Coverage form and its Employee Dishonesty rider provide first-party coverage, not third-party coverage. "First-party coverage entitles the insured to receive benefits directly from the insurer, while third-party coverage satisfies tort claims of third parties against the insured by way of indemnification." Wilbur v. State Farm Mutual Auto. Ins. Co., 880 N.W.2d 874, 881 (Minn. Ct. App. 2016).

"Although employee dishonesty policies may cover the loss of third-party property in the possession of the insured, these policies do not serve as liability insurance to protect employers against tortious acts committed against third-parties by their employees." Cargill, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. A03-187, 2004 WL 51671, at *11 (Minn. Ct. App. Jan. 13, 2004) (quoting Lynch Props., Inc. v. Potomac Ins. Co., 140 F.3d 622, 629 (5th Cir. 1998)).

### H. Duty to Indemnify

Because the Court concludes that there is no duty to defend, it similarly concludes that there is no duty to indemnify. See Selective Ins. Co. of Am., 781

F.3d at 985 ("[I]f the court concludes there is no duty to defend, then there is also no duty to indemnify.").

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

> Defendant American Casualty Company of Reading, Pennsylvania's Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment [Docket No. 28] is **GRANTED**.
>
> All claims against Defendant American Casualty Company of Reading, Pennsylvania are **DISMISSED WITH PREJUDICE**.

Dated:  October 16, 2018            s/ Michael J. Davis                    
                                                    Michael J. Davis
                                                    United States District Court